UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| THOMAS D., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:18-cv-00096-LEW |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II[1] of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

## The Administrative Findings

The Commissioner's final decision is the April 4, 2017 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 14-2.)[2] The ALJ's decision tracks

---

[1] Plaintiff states that he also applied for supplemental security income. (Statement of Errors at 1.) The administrative record only includes an application for disability insurance benefits. (Ex. 1D, R. 150, ECF No. 14-5.) Regardless, the analysis would be the same on this record.

[2] Because the Appeals Council found no reason to review that decision (R. 1), the Acting Commissioner's

the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 404.1520.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of obesity and diabetes type II with peripheral neuropathy. (ALJ Decision ¶¶ 3, 4, R 13.) The ALJ also determined that Plaintiff, though impaired, retains the residual functional capacity (RFC) to perform light-exertion work, provided he does not have to stand and/or walk for greater than 3 hours in an 8-hour workday, or for longer than a 1-hour interval. Additionally, the ALJ found Plaintiff is able to perform frequent fingering, pushing, and pulling, but only occasional feeling. Plaintiff cannot operate foot controls, balance on uneven surfaces, or climb ladders, ropes or scaffolds. Plaintiff can only occasionally climb ramps and stairs, crouch, kneel, stoop, and crawl. Plaintiff's RFC is also subject to certain environmental restrictions. (*Id.* ¶ 5, R. 14.)

Plaintiff's past relevant work consists of driving a bus, which he is unable to perform because the job requires medium exertion and the use of his feet. (*Id.* ¶ 6, R. 18; Hr'g Tr. at 4, R. 37.) After considering Plaintiff's RFC and Plaintiff's age (younger individual), and education (high school), a vocational expert testified that work exists in sufficient numbers in the national economy that Plaintiff could perform, including in three specific, sedentary occupations (bench worker, assembler, and circuit board inspector). (ALJ Decision ¶¶ 7 – 10, R. 18 – 19.) The ALJ accepted the vocational expert's testimony and concluded that Plaintiff is not disabled. (*Id.* ¶¶ 10 – 11, R. 19 – 20.)

---

final decision is the ALJ's decision.

**Standard of Review**

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion**

Plaintiff argues the ALJ did not adequately explain the reasons he gave only limited weight to the vocational rehabilitation report, particularly as to the findings regarding upper extremity function. Plaintiff maintains the report is consistent with the opinions expressed by Sarah Chamberlain, D.O., and Sarah Crane, D.O., who assessed Plaintiff's limitations. (Statement of Errors at 5 – 7.) Plaintiff further argues the ALJ erred in the weight afforded to the opinion evidence of record (*id.* at 7 – 12), and did not fairly evaluate Plaintiff's reported symptoms (*id.* at 12 – 15).

**A. Assessment of Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the work capacity determination made by Dustin Greenlaw of the Maine Bureau of Rehabilitation Services. The ALJ

discussed Mr. Greenlaw's report and gave "limited weight" to Mr. Greenlaw's determination. (R. 15.) The ALJ assessed Mr. Greenlaw's conclusions in the context of his evaluation of the entire record. As the following analysis reveals, the ALJ's assessment of Plaintiff's medical records and the medical opinions of record is sound, and thus his decision to give limited weight to Mr. Greenlaw's report is supportable.

In his assessment of Plaintiff's RFC, the ALJ considered the functional capacity evaluation (FCE) report of Anne Knowles, PT, dated February 20, 2015. (R. 15; Ex. 3F, R. 323 – 26.) According to Ms. Knowles, Plaintiff reported that he was unable to pass the Department of Transportation physical to remain a bus driver; that he is limited in his ability to engage in "tight grasp activities like shoveling" and certain lifting activity like "setting up the cones, mats, weights, dexterity tests, etc. when at work" (R. 323); and that he experiences pain and numbness in his hands and feet, which "comes on as the day progresses," with periods of "shooting pain" (*id.*).

Ms. Knowles determined that Plaintiff "is able to work at the LIGHT Physical Demand Level for an 8 hour workday," and primarily is limited in his ability to squat, kneel, crawl, balance, and engage in "fine motor tasks." (R. 324.) Ms. Knowles described the results of her evaluation as "equivocal," and suggested her findings may not reflect maximum ability. (*Id.*) Concerning Plaintiff's hand function, Ms. Knowles assessed a capacity for simple grasping and pushing and pulling, but not for "fine work" or assembly work. (R. 325.)

The ALJ gave Ms. Knowles's assessment "considerable weight," and found the assessment to establish a light-exertion work capacity. (R. 15.) The ALJ, however,

considered the hand function findings to be less reliable, noting that Ms. Knowles expressed "some skepticism" about Plaintiff's effort. (*Id.*)

Plaintiff established care with Sarah Chamberlain, D.O., in August 2015. (Ex. 6F, R. 341.) On December 31, 2015, Dr. Chamberlain found Plaintiff had a capacity for light work, and an ability to sit for 8 hours, stand for 1 hour at a time, walk for 1 hour at a time, and stand or walk for as many as 3 hours in a workday. (Ex. 7F, R. 347 – 48.) Although Dr. Chamberlain did not test Plaintiff's hand capability, she noted that Plaintiff reported limitations "believed to be related to diabetic peripheral neuropathy." (R. 348.) Based on her review of Ms. Knowles's FCE report, Dr. Chamberlain determined that Plaintiff cannot perform work that relies on the ability to "feel," can occasionally perform finger work, and can frequently reach and handle. (R. 349.)

In September 2016, Plaintiff reported to Sarah Crane, D.O., fatigue possibly related to medication, non-compliance with a diabetic diet, and exacerbation of neuropathy with prolonged sitting and standing. (Ex. 10F, R. 402.) Dr. Crane's impression was that Plaintiff had "evidence of peripheral neuropathy," and an inability "to sit or stand for long periods of time due to pain with neuropathy." (R. 406.) The ALJ gave this impression "partial weight" (R. 17), noting that Dr. Crane found a normal range of motion, normal gait, normal station (R. 16).

The ALJ's findings regarding Plaintiff's ability to sit or stand and walk during a workday, and his assessment of the postural and environmental issues, including Plaintiff's ability to push and pull, are supported by the opinions of Dr. Chamberlain and Ms. Knowles. The ALJ's findings that Plaintiff can frequently perform finger work,

5

occasionally perform feeling work, and is not limited in the ability to reach and handle, while not necessarily supported by Dr. Chamberlain, is nevertheless supported by the record evidence. First, although Dr. Chamberlain stated that Plaintiff could not perform work involving feeling, and only occasionally perform finger work (R. 349), she did not conduct any testing on Plaintiff's hand ability. Rather, she relied on an "equivocal" finding by Ms. Knowles. The ALJ, therefore, supportably declined to adopt Dr. Chamberlain's finding. In addition, Ms. Knowles's observation that "[t]he primary area with less valid results was during the hand use" (R. 324) raises a legitimate question about Plaintiff's effort during the testing. Under the circumstances, the ALJ permissibly and reasonably assessed Plaintiff's daily activities as part of the RFC determination. When treatment records generate questions about the validity of test results due to a plaintiff's effort, an ALJ must be able to consider other evidence to assess the reliability of the results. In other words, an ALJ is not required to adopt "equivocal" results.

Here, the ALJ's consideration of Plaintiff's daily activities as part of the ALJ's RFC determination was reasonable and does not constitute an impermissible medical determination by the ALJ. The ALJ supportably discounted the opinion of Dr. Chamberlain on the issue of Plaintiff's capacity to manipulate objects, [3] and otherwise

---

[3] Additional support of the ALJ's determination is found in the reports of Donald Trumbull, M.D., and Benjamin Weinberg, M.D., the Disability Determination Services consulting physicians who performed the reconsideration review and considered the same PT report. Dr. Trumbull and Dr. Weinberg found no manipulative limitations. (R. 64, 78.) Where the non-examining agency expert has reviewed the material evidence contained in the medical record, and the ALJ has rejected the relevant opinion(s) of the treating source(s) for "good reason," the opinions of the agency experts about the claimant's RFC can constitute substantial evidence of a claimant's RFC. *Alazawy v. Colvin*, No. 2:16-cv-240-JHR, at *6-7 (D. Me. Dec. 26, 2016). Plaintiff's challenges to the ALJ's assessment of the findings of Drs. Trumbull and Weinberg are unconvincing.

6

supportably assessed Ms. Knowles's findings.

Plaintiff also argues the ALJ erred in his assessment of the record evidence regarding Plaintiff's vision. Plaintiff points to Dr. Chamberlain's notation of "DM retinopathy with clinically significant macular edema to the right eye" based on a 2014 examination. (Statement of Errors at 9, citing Ex. 7F, R. 350.) Plaintiff also cites more recent care for vision problems, and argues the ALJ judged matters entrusted to experts because no consulting expert reviewed the records. (*Id.* at 11 – 12, referencing Ex. 9F.)

While Dr. Chamberlain found Plaintiff has an impairment that impacts his vision, on her RFC documentation, to questions inquiring whether Plaintiff's ability to see is sufficient, she marked "yes" to all the questions except one to which she responded "unknown."[4] Notably, Dr. Chamberlain found that Plaintiff can see well enough to avoid ordinary hazards, read ordinary newspaper or book print, view a computer screen, and differentiate between small objects such as screws, nuts, and bolts. (R. 350.) Dr. Chamberlain's records simply do not support a finding that Plaintiff's vision issues generate a limitation that would preclude Plaintiff from performing the jobs identified by the vocational expert.

The more recent records also do not support a finding of a vocational limitation. On March 23, 2016, Plaintiff denied any pain or change in vision. (R. 359 – 60.) While his health care provider suggested Plaintiff might want to restrict his driving to daylight hours and close to home, the provider described Plaintiff's condition as "mild" and "moderate,"

---

[4] Dr. Chamberlain's "unknown" response was to the question whether Plaintiff can "read very small print."

and as basically stable. (R. 364, 365, 367, 372, 374, 375.) The records do not compel a finding that Plaintiff's vision condition is a severe impairment. Indeed, in September 2016, when asked by Plaintiff to complete paperwork for Plaintiff's disability claim, the provider informed Plaintiff that "his vision is too good for disability for his eyes." (R. 375.)

Finally, Plaintiff argues the ALJ did not properly weigh the opinion of Dr. Crane. (Statement of Errors at 10.) Dr. Crane's impression was that Plaintiff has "evidence of peripheral neuropathy," that he should consider diabetic shoes, that he "is unable to sit or stand for long periods of time due to pain with neuropathy," and that he "has impaired vision," which "issues contribute to inability to work full time and inability to find gainful employment." (Ex. 10F, R. 406.) The ALJ afforded "partial weight" to Dr. Crane's findings given that Dr. Crane noted that Plaintiff had a normal range of motion, normal strength, and normal gait and station. (R. 16 – 17.) Significantly, Dr. Crane did not address Plaintiff's vocational capacity for object manipulation, nor assess the vocational limitation of Plaintiff's impaired vision. Dr. Crane's opinion is thus limited to Plaintiff's inability to sit or stand for long enough duration to engage in full time work. On this point, the ALJ's observation that Dr. Crane found normal range of motion, normal strength, and normal gait supports the "partial weight" the ALJ afforded to Dr. Crane's opinion. Regardless of Dr. Crane's opinion, the ALJ's assessment of Plaintiff's capability to sit, stand and walk is supported by substantial evidence, including the opinion of Dr. Chamberlain.

In sum, the ALJ appropriately considered and discussed the evidence, which includes the opinion evidence, and supportably found that Plaintiff had a capacity "to perform a reduced range of light work." (R. 14.)

**B. Subjective Report of Symptoms**

Plaintiff argues the ALJ did not give sufficient weight to Plaintiff's subjective report of symptoms, which report was corroborated by the report of Plaintiff's spouse. Plaintiff contends the ALJ failed to consider the limitations resulting from Plaintiff's fatigue, failed to appreciate the significance of Plaintiff's pain, and improperly assessed Plaintiff's unwillingness to wear diabetic shoes,[5] and the advice to Plaintiff to exercise and modify his diet. (Statement of Errors at 12 – 15.)

The ALJ's decision reflects that the ALJ was aware of Plaintiff's allegations of fatigue and pain and considered the reported symptoms in the assessment of Plaintiff's functional capacity. (R. 15, 16, 17.) In addition, the record lacks any reliable opinion evidence to support additional limitations to accommodate Plaintiff's complaints of fatigue and pain. The ALJ's discussion regarding Plaintiff's diet, exercise and unwillingness to wear diabetic shoes was also reasonable. The ALJ did not criticize Plaintiff for failing to observe a proper diet. Rather, the ALJ simply observed that Plaintiff "was diagnosed with diabetes and advised to monitor his diet, exercise, and lose weight." (R. 15.) The ALJ recognized that Plaintiff reported that pain made it difficult for him to engage in exercise, and the ALJ did not suggest that he discounted Plaintiff's report. (R. 16.)

Plaintiff's contention that the ALJ's observation that Plaintiff's refusal to wear diabetic shoes suggests his symptoms were not as severe as alleged constitutes an improper

---

[5] The ALJ observed that Dr. Chamberlain "noted the claimant's diabetes was controlled and his blood sugar levels were normal, when fasting," and that Plaintiff has neuropathy "but refused any diabetic footwear, which would indicate his symptoms were not as severe as he alleged." (R. 16, citing Ex. 11F:15, R. 429.)

9

assessment of Plaintiff's subjective complaints also fails. Plaintiff maintains that the ALJ's assessment was impermissible because Plaintiff used diabetic socks. While the record includes reference to diabetic footwear, which could arguably include diabetic socks, the record reflects that Plaintiff "was advised to get diabetic shoes but [would] not wear [them] due to cosmetic reasons." (R. 424.) The ALJ's finding that Plaintiff refused to use the "diabetic footwear" is thus supported by the record, and his inference from Plaintiff's refusal to use the shoes was reasonable.

In short, a review of the record reveals that the ALJ reviewed and permissibly assessed Plaintiff's subjective complaints. To remand the matter on this record would effectively substitute the Court's independent assessment of Plaintiff's subjective complaints for the ALJ's assessment, which would be improper. *Irlanda Ortiz v. Sec'y of HHS*, 955 F.2d 765, 769 (1st Cir. 1991) ("It is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the Secretary, not the courts." (citation omitted)).

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days

of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

                       /s/ John C. Nivison
                       U.S. Magistrate Judge

Dated this 10th day of January, 2019.